IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Dr. Isaac Brunson

_____

_____

_____

*(Write the full name of each plaintiff who is filing
this complaint.  If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**-against-**

Benedict College, Dr. Roslyn Clark Artis, Dr. Janeen Witty
_____

Dr. Kimberly Haynes-Stephens, Mrs. Martha Smith,
_____

Gina Moore, and Dr. Nuria Rojas
_____

*(Write the full name of each defendant who is
being sued.  If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for a Civil Case**

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial:     ☒ Yes     ☐ No
                *(check one)*

2022 NOV -7  PM 3:40
RECEIVED
USDC CLERK, COLUMBIA SC

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dr. Isaac Brunson |
| Street Address | 86 E. Brewington Road |
| City and County | Sumter / Sumter County |
| State and Zip Code | South Carolina 29153 |
| Telephone Number | (803) 983-0442 |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Benedict College |
| Job or Title (if known) | |
| Street Address | 1600 Harden Street |
| City and County | Columbia / Richland County |
| State and Zip Code | South Carolina 29204 |
| Telephone Number | (803) 705-4681 |

Defendant No. 2

| | |
|---|---|
| Name | Dr. Roslyn Clark Artis |
| Job or Title (if known) | College President |
| Street Address | 1600 Harden Street |
| City and County | Columbia / Richland County |
| State and Zip Code | South Carolina 29204 |
| Telephone Number | (803) 705-4681 |

Defendant No. 3

| | |
|---|---|
| Name | Dr. Janeen Witty |

2

|  | Job or Title (if known) | Vice President Academic Affairs |
|--|--|--|
|  | Street Address | 1600 Harden Street |
|  | City and County | Columbia / Richland County |
|  | State and Zip Code | South Carolina 29204 |
|  | Telephone Number | (803) 705-4761 |

Defendant No. 4

|  | Name | Dr. Kimberly Haynes Stephens |
|--|--|--|
|  | Job or Title (if known) | Assocuiate Vice President Academic Affairs |
|  | Street Address | 1600 Harden Street |
|  | City and County | Columbia / Richland County |
|  | State and Zip Code | South Carolina 29204 |
|  | Telephone Number | (803) 705-4747 |

## II.    Basis for Jurisdiction

[See attachment B for other Defendants]

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒  Federal question                ☐  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title VII 1964 Civil Rights Act

42 U.S.C. Section 2000e  / 42 U.S.C. 1981

Racial Discrimination in Employment

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

_____

_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

[SEE ADDENDUM A]

(1) Racial Discrimination    (2) Defamation of Character

(3) Harassment & Retaliation (4) Wrongful Termination and Breach of Contract

_____

_____

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

(1) EMPLOYMENT-Chair Department Music @ $95,000 annual / In lieu of EMPLOYMENT the following:

(2) Actual Damage: $1,317,000 (3) Back Pay: $425,000 (4) Punitive Damages - $17,000,000

(5) Compensatory Damages - $200,000

(6) Retaliation and Defamation of Character - $13,000,000 / Caucasian supervisor conspired with

Interim Dean of Communications and Arts in retaliatory activities against Plaintiff.

(7) Harassment - $7,900,000 (Emotional and Physican Distress caused by Caucasian supervisor and

administrative conspirators..

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: November 7 , 2022.

Signature of Plaintiff _____

Printed Name of Plaintiff     Isaac Brunson

### B.     For Attorneys

Date of signing: _____, 20__.

Signature of Attorney          _____
Printed Name of Attorney    _____
Bar Number                        _____
Name of Law Firm              _____
Address                              _____
Telephone Number             _____
E-mail Address                   _____

Dr. Isaac Brunson v. Benedict College, et al

**ADDENDUM A**

## 1) RACIAL DISCRIMINATION

On Tuesday, December 27, 2021, my immediate supervisor, Gina Moore, perpetrated both racial discrimination and defamation of character on me. Gina Moore, my Caucasian supervisor, began singling me out soon after I wrote a nine-page letter to the Interim Dean commenting on activities within the Music area of the Division of Communication and Arts (EX.N- *"Issues of Concern Regarding Treatment of Music Students"*). On December 27, 2021, Gina Moore made false and malicious accusations on me in a group email chain (see EX. C-C3); the email also implicates Dr. Kimberly Haynes-Stephens as a conspirator. I immediately responded and rebutted her lies in the same sequence of emails.

Gina Moore acted with intentional reckless regard for my reputation because it was too obvious that she was responding to a group email chain. The hubris exhibited in Gina Moore's malicious and false accusations was because she has a history of passive-aggressive harassment of former African American faculty members but knew she would be supported, without proof or evidence, by the above named, complicitous Defendant administrators: There is previous documented history of Gina Moore's negative interactions with only African American faculty members under her supervision. Historically, Moore has replaced those individuals with Caucasian faculty, especially in the Music area, to fulfill her goal of creating an all-Caucasian Music Department at Benedict College.

The racist actions perpetrated against me by Gina Moore was conducted, primarily, to sabotage any potential opportunity of my being promoted over my Caucasians colleagues. I came to Benedict College with previous administrative experience; I came with more teaching experience; and I was better credentialed than any of my Caucasian colleagues.  Gina Moore's racial biases was further evident when, upon my first semester at the college, she made it very clear that she was promoting a Caucasian faculty member, Andrew Hutchens, to take over the chair position, or head the newly revived Music Industry program; Mr. Hutchens was, at the time, newly hired, and a doctoral student at the University of South Carolina, with no prior college teaching experience. However, without discussion or announcement, Mr. Hutchens was appointed head of the Music Industry Program for which he had no prior experience. Though I made question of this appointment to the Vice President of Academic Affairs, Dr. Janeen Witty, it was to no avail; she was complicit in the matter.

The administration's complicity in Gina Moore's bias and racist actions towards African American faculty members is due, in part, to the fact that she will accommodate, and has previously accommodated, the administration's "ask" without question. This was evident, to me, when I came across a rising senior in music who could not recognize basic elements of music theory when questioned. Such basic music theory elements as recognizing the notes on the treble staff: I have taught second graders to do more complicated musical concepts. Yet, Gina Moore and this

student's teacher, Dr. Nuria Rojas, had to sign off on this student's inflated grades and continued to pass this student on to even more difficult sequential courses in music theory, even though he had not mastered basic elements of first-semester music theory. These egregious actions were also carried out, with the administration's complicity, in a general effort to present inflated student GPAs and attendance records so Benedict College could continue receiving fraudulent governmental funds.

I reiterate, I noticed Gina Moore's biases within the first month of my coming to teach at Benedict College. Further examples of Moore's racial biases against me and other African American faculty members are as follows:

(a) Gina Moore reprimanded me for cancelling my last class of the day due to a medical emergency: My left foot had swollen to the point where I could barely stand on it, so it was imperative that I get to a doctor immediately. Contrarily, she allowed her selected Caucasian grad student to egregiously miseducate two male Voice Performance students during their senior year by "teaching" them virtually, even though the entire faculty had been ordered to return to in-person teaching the third week of classes. I immediately commented on the appearance of Moore's bias, but as usual, the Interim Dean, Dr. Kimberly Haynes-Stephens, covered for Moore's bias by lying about the urgency to fill a need (EX. G): There were numerous local area voice teachers who could have been called to teach these students in-person, to the

betterment of the students. Another example of the administrators not acting in the best interest of the students, but out of cronyism.

(b) Gina Moore assigned African American professor Ken Cheek's best applied saxophone students to new Caucasian professor, Andrew Hutchens, without even notifying Mr. Cheeks of her actions. Mr. Cheeks, who had been a long-time adjunct saxophone instructor at Benedict College, did not return to teach in the Spring semester because of the disrespect he endured at the hands of Gina Moore, and with the complicity of Dr. Kimberly Haynes-Stephens and Dr. Janeen Witty: Moore's motive operandi was to disrespect and passive-aggressively harass African American professors within the Music area to the point of their leaving the college in disgust and frustration. She then replaced them with Caucasian faculty. Though I protested Gina Moore's treatment of African American faculty members, the administration conveniently ignored me and continued to support Moore in her racist actions.

(c) Gina Moore harassed Dr. Angela Blalock, a tenured African American voice professor who taught at Benedict College for years, to the point where she also left the college.

(d) Another African American voice professor, Dr. Ginger Jones-Robinson, also faced Moore's passive-aggressive harassment and left Benedict College in frustration and disgust. In both cases, the administration was complicit in the treatment Gina Moore perpetrated on these African American women.

(e) It should be noted that Tessier Morris, the Caucasian graduate student selected by Moore to teach voice on an adjunct basis, was allowed to egregiously miseducate two senior male voice students by "teaching" them applied voice via Zoom sessions. This detrimental procedure was perpetrated on these two students for their entire senior year of college. Gina Moore, Interim Dean Kimberly Haynes Stephens, and VP Academic Affairs, Dr. Janeen Witty, allowed Ms. Morris to teach at home for the entire school year, and it was at the expense of the two students, especially. Both young men would have been much better served if Gina Moore, Dr. Kimberly Haynes-Stephens, and Dr. Janeen Witty had allowed area voice teachers to come teach these students on an in-person basis.

(f) Ms. Morris, a Caucasian grad student, was furnished travel and hotel accommodations when she came to campus only at the end of the semester for two days of vocal juries: Gina Moore, Dr. Kimberly Haynes-Stephens, and Dr. Janeen Witty were indifferent to the collateral damage imposed on the two young men.

(g) Contrastingly, Dr. Angela Blalock and Dr. Ginger Jones-Robinson, experienced African American voice teachers, experienced only prolonged passive-aggressive harassment from Gina Moore, Dr. Kimberly Haynes-Stephens, and Dr. Janeen Witty.

(h) Gina Moore's racial biases were never more obvious than when she interacted with me. As professor of music and choir director, I was entitled to receive assigned funds for the choir, for travel and for teaching supplies. After exhausting all attempts to request funds from

Moore and the VP of Academic Affairs, Dr. Janeen Witty, I was forced, out of necessity, to create ALL academic content for seven (7) individual Applied Voice students; for Conducting I & Conducting II courses; for a Music History & Literature II course; and for all the necessary sheet music and music folders for the Concert Choir. Because of the actions of Gina Moore and Dr. Janeen Witty, Benedict's entire academic administration were negligent and failed to meet their fiduciary duty to the students of the Music area. Therefore, it was incumbent upon me to purchase the necessary materials and equipment needed to meet my students' needs: Copy paper; Copier; Weekly ink; Music literature for seven (7) Applied Voice students; and sheet music and folders for the Concert Choir.

Contrary to me, my Caucasian colleagues received everything they needed to deliver their educational instructions. I had to buy everything required to deliver a quality education to my students.

One blaring example of Gina Moore's and Dr. Janeen Witty's biases was their catering to Professor Andrew Hutchens' Music Industry program. Mr. Hutchens, a Caucasian instructor, received new instruments, new equipment, and the renovation of an entire building, at his request. However, the same individuals rejected and refused every request I made, even for such basic necessities as copy paper to produce testing material for my quizzes and exams.

## 2) DEFAMATION OF CHARACTER

On December 7, 2021, my immediate supervisor, Gina Moore, committed defamation of my character in a group email chain. Professor Moore made false statements and accusations against my character in a forum in which she knew other faculty members and administrators would see (EX. C-C3). I filed the necessary complaint with the Department of Human Resources, but in their complicity in this matter, the director merely "handled" me and refused to reprimand Professor Moore; on the contrary, it will be shown that the administration fabricated bogus information to make me the scapegoat for Gina Moore's actions.

As I forewarned Mrs. Martha Smith, Director of Human Resources, Gina Moore would become even more aggressive in her harassment of me if she was not reprimanded for the initial lies and accusation, she spewed in the group email. In early May 2022, Gina Moore told more lies and defamed my character verbally with one of my students, Azan Washington. My student confided in one of her fellow Benedict graduates what was told to her by Professor Moore and accused Dr. Nuria Rojas of complicity (see EX. M).

## 3) HARASSMENT & RETALIATION

Professor Moore's retaliatory actions began soon after I submitted the nine-page letter of "Student Treatment Concerns" (EX. N). Gina Moore's retaliation and harassment created a hostile environment in my workplace; my colleagues stopped communicating with me (EX. O-O2); and Professor Moore obviously showed bias and preferences favorable to my Caucasian

colleagues (EX. P). The following are examples of the harassment and retaliatory measures Gina Moore perpetrated on me:

a) Harassing, disrespectful, and demanding emails daily (EX. C-C3).

b) Refused to fund any activity or efforts associated with me; teaching materials; choir budget; funds for attendance at choral conferences, etc (EX. D-D5). Moore and another Caucasian music faculty, Dr. Nuria Rojas, together baited my students to make false accusations against me to the VP of Academic Affairs (EX.M)

c) Professor Moore harassed me for petty issues that other, objective, unbiased, supervisors would not dare: In EX. Q, for example, Moore tried to make it appear I was responsible for adult students' actions and lack of responsibility; in EX. R, Moore stooped so low as to create a bogus reason to monitor my class on the last day of classes. I had just dismissed my choir for that day, since we previously met, did housekeeping, and students had returned performance attire. Never had I been so harassed and disrespected by a supervisor; other choral directors commented that her racist, retaliatory actions would not have been tolerated anywhere else (EX. R). Moore's actions were especially hypocritical because she never bothered to fund the choir on anything, including issues concerning the Spring choral concert. On the contrary, Gina Moore's pettiness on spying on me on the last day of classes was to have it appear I was neglecting my academic responsibilities; and, with Benedict's complicit administrators, it worked.

d) However, one of the most blatant examples of Gina Moore's racist harassment was demonstrated when she went into the PayCom payroll

system and changed an "APPROVAL", for my requested leave of absence, to a "DENIAL". EX. S1 is PayCom's approval of my request for leave of absence, EX. S2 is Gina Moore's unethical manipulation of the PayCom payroll system, changing the "APPROVAL" to a "DENIAL." EX. S3 is an example of Moore's zealotry to sabotage my career at Benedict College, to eliminate any future opportunities for my advancement or promotion over my Caucasian colleagues: I was at work on April 4th, 2022. Gina Moore harassed me constantly over the issue of my leave of absences because she wanted to exert what she thought was her power over me (EX. S1-S6). An action that would have gotten Gina Moore fired from most respectable colleges, was covered up by the complicity of Benedict College's administrators.

*Being subjected to consistent racist retaliation and harassment from Professor Moore and Benedict College's administrators has taken a detrimental toll on my mental, spiritual, and, especially, physical health. The stress endured during my time at Benedict has exacerbated and inflamed health issues associated with stress, including dangerously high blood pressure.*

e) In their unified efforts to cover up for Gina Moore's racial biases and to make me the scapegoat for her actions against me, Benedict's administrators, Dr. Janeen Witty, Mrs. Martha Smith, and Dr. Kimberly Haynes-Stephens, also began their campaign to fabricate bogus information against me. Dr. Janeen Witty, VP Academic Affairs, bogusly

constructed her Performance Improvement Plan (PIP) to corruptly label me as an incompetent educator, in her efforts to help create *"cause"* , which facilitated their strategy for my termination: I immediately responded with my rebuttal (EX. T-T5).

My academic credentials and experiences were/are more weighted than any of my colleagues in the Music area. I am certified and licensed to teach in North Carolina, South Carolina, and Georgia; I have experience in administration and teaching at the college-level: I know more about instructional strategies than any of my colleagues, and, apparently, the VP of Academic Affairs.

f) Dr. Janeen Witty's feigned concern for the quality of my teaching is undermined by her actual lack of funding for the needs of the choral program and its students. On numerous occasions, I made requests and appeals to Dr. Witty and Gina Moore for the necessary funding needed to develop a legitimate choral program, but I NEVER received it; the former choral program had become inactive and defunct for more than 5 years due to the lack of proper funding and lack of experienced choral directors (EX. D-D5).

g) Neither Gina Moore nor Dr. Janeen Witty approved or granted any funding request for the necessary physical or academic materials needed of the choral program; but they provided Andrew Hutchens, my Caucasian colleague, with new instruments, new equipment, and building renovations which amounted to well over $100,000. Contrastingly, I had to pay for all needed musicians and guest soloist out

of my own pockets if I wanted the April 13th Spring Concert to occur. I personally paid for those necessities, despite the lack of administrative support, because I needed my students to experience success in performance, once again: Moore and Witty wanted the program to fail so they could again manufacture "cause" for their plans to terminate me.

h) Mrs. Martha Smith, Director of Human Resources, regarding my complaint against Professor Moore, proceeded to "handle" me in her efforts to support the dictates of the administration, and cover up for the Gina Moore because she had placed the college in a precarious position via her engagement in the defamation of my character and reputation. I gave her examples of other African American faculty members who were, in the past, also subjected to Gina Moore's racial biases (EX. V). Mrs. Smith entire agenda, when addressing my concerns, was to mitigate any possible damage to the college. Therefore, she lied, she stalled, and hoped I would eventually abandon my pursuit for justice. I made numerous inquiries as to the status of her "investigation" only to be "handled" until she believed the college had the advantage. I requested that Gina Moore be given a stern reprimand for her racist actions against me, but Mrs. Smith did nothing (EX. V-V7).

i) Dr. Kimberly Haynes-Stephens, Interim Dean of Communications and Arts, and Gina Moore's immediate supervisor, never reprimanded Moore for her actions against me. In fact, Dr. Haynes-Stephens was a conspirator in Moore's efforts to sabotage my career, and any potential

opportunities for advancements or promotions over my Caucasian colleagues. Dr. Haynes-Stephens is implicated in Moore's defamatory accusation in the previously mentioned group email chain (EX.C-C3). Though Dr. Haynes Stephens immediately apologized for Gina Moore's racist email, it was only an effort to disguise her would-have-been culpability in the incidence: Haynes-Stephens actions were merely pro forma, she did absolutely nothing further regarding the incidence.

## 4) WRONGFUL TERMINATION AND BREACH OF CONTRACT

Benedict College violated its own policies when they terminated my employment. The following reasons are why my termination was wrongful and resulted in breach of contract:

1. I was not notified of my non-reappointment in a timely fashion pursuant to Faculty Manual § 6.2.1; therefore, I am to be considered reappointed, as stated below:

**6.2.1 Reappointment Procedure for Non Tenured Faculty Members**
The Vice President for Academic Affairs will request no later than January 15th of each year recommendations from the Dean concerning reappointment of each and every non-tenured faculty member. The Dean may receive recommendations from the Department Chair, review faculty evaluations, and any other information desired. Upon review of the recommendations of a faculty member's Dean, the Vice President of Academic Affairs will make recommendations to the President no later than February 15th concerning appointments and non-reappointments. The President will then make the final decision concerning reappointment and inform the faculty member no later than March 15th each year. Any faculty member not receiving a notice of non-reappointment by March 15th will be reappointed. The College reserves the right to reappoint or not reappoint any non-tenured faculty member at its sole discretion. The non-reappointment of a faculty member is not subject to the faculty grievance process, nor may such a decision be appealed. [EX. **W**]

2. I had no disciplinary actions of note, and the only potential performance documentation was a disputed PIP that the Vice President of Academic Affairs office attempted to give me at the end of the school year. The PIP was presented without objective metrics or a sufficient amount of time for observation and improvement even had it been warranted (EX. T).

3. I believe my termination is in retaliation for my reporting race discrimination by my Chair and other inappropriate administrative and departmental actions that disadvantaged Benedict's students, initially described in my November 23rd, 2021, letter to the Interim Dean, Dr. Kimberly Haynes-Stephens. Copies of the letter was forwarded to the VP Academic Affairs, Dr. Janeen Witty and the President of benedict College, Dr. Roslyn Clark Artis (EX. N).

   (a) My employment contract states I would receive three years toward tenure upon completion of my first-year service (EX. X). In retaliation for my exposing the unethical actions perpetrated on the students of the Music area, by Professor Moore, Dr. Nuria Rojas, and Benedict College's administrators, the college began its campaign of defamation, harassment, and the manufacture of bogus documents that damaged my character and reputation.

   (b) My request for a legitimate appeal of my termination was met with dishonesty. The college was never willing to honor my request for them to present authentic documents on which they based their decisions to terminate me (EX. Y).

   (c) Administrators of the college, in their effort and haste to malign my character and make it appear I was incompetent as an educator, contradicted themselves. In their desperation to make me a scapegoat,

administrators manufactured situations to create plausible "cause" for termination. The administration, in their hubris, did not think it was necessary to even present the appearance of fairness when they haphazardly sent me two different letters of termination; by the dates on either termination letters, I was owed compensation from the third week of May through to the first week of August, or through to the third week of September. That did not happen.  (EX. Z-Z2).

Professor Gina Moore's racial biases is documented history at Benedict College. Numerous African American faculty members have been victims of her prejudices; and she was never hesitant to quickly replace her African American victims with personally selected Caucasian faculty. Her tenure at Benedict, more than 35 years, and the fact that she has done the school's bidding in the inflation and falsification of grades, has given her a sense on invincibility. And, unfortunately, Gina Moore has been supported in her actions by an administration willing to sacrifice other African American faculty members to protect her in the devotion to the college's fraudulent activities. Furthermore, and unfortunately, it is the students who are the proof of Benedict's unethical academic practices: They deserve so much more.

Respectfully submitted this 7th day of November 2022.

Dr. Isaac Brunson

86 E. Brewington Road
Sumter, South Carolina 29153
(803) 983-0442

**ATTACHMENT A**

**Benedict College Defendants**

1) Benedict College

2) Dr. Roslyn Clark Artis, President

3) Dr. Janeen Witty, VP Academic Affairs

4) Dr. Kimberly Haynes-Stephens, Associate VP Academic Affairs

5) Mrs. Martha Smith, Director Human Resources

6) Gina Moore, Chair Communications and Arts

7) Dr. Nuria Rojas, Professor

**ATTACHMENT B**

**DEFENDANTS INFORMATION (CONTINUED)**

5)  Mrs. Martha Smith
    Director of Human Resources
    1600 Harden Street
    Columbia / Richland County
    South Carolina 29204
    (803) 705-3227

6)  Gina Moore
    Chair, Communications and Arts
    1600 Harden Street
    Columbia / Richland County
    South Carolina 29204
    (803) 705-4605

7)  Dr. Nuria Rojas
    Professor Music
    1600 Harden Street
    Columbia / Richland County
    South Carolina 29204
    (803) 705-4563

<u>Dr. Isaac Brunson v. Benedict College, et al</u>
**ADDENDUM B**

**RELIEF**

*Overview of Title VII for Employment Discrimination Claims*

The Civil Rights Act of 1991 amended Title VII. Before 1991, Title VII provided only equitable remedies, and jury trials were not available. 42 U.S.C. § 2000e-5(g)(1) (providing for reinstatement, back pay and "any other equitable relief as the court deems appropriate"). The 1991 amendments added the legal remedies of compensatory and punitive damages and the right to trial by jury for those remedies. 42 U.S.C. § 1981a(a)(1). Title VII plaintiffs now may recover injunctive and other equitable relief, compensatory and punitive damages, and attorney's fees. 42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1), (k).

Pursuant to Title VII the Civil Rights Act of 1964 and all its amendments, I seek the following compensation for redress:

1) **Employment in an Administrative position** (Chair Music Department) at a salary of $95,000 annually, in addition to the accompanying fringe benefits.

   In lieu of the above, I request the following as remedy for the claims listed within my lawsuit:

   (a) **Back Pay**: @ $85,000 annual per five-year period, to equal the sum of $425,000.

   (b) **Front Pay**: @$85,000 annual per a ten-year period to equal the sum of $850,000.

   (c) **Lost healthcare / Insurance** @ $350 per month for 12 months to the sum of $4,200 annually, totaling $42,000 per ten-year period.

   (d) **Punitive Damages:** $17,000,000

   (e) **Compensatory Damages:** $200,000

   (f) **Defamation of Character:** $13,000,000

   (g) **Harassment:** $7,900,000