IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Dr. Isaac Brunson, | Case No. 3:22-cv-03921-JDA |
| Plaintiff, | |
| | **OPINION AND ORDER** |
| v. | |
| Benedict College, Dr. Roslyn Clark Artis, Dr. Janeen Witty, Dr. Kimberly Haynes-Stephens, Mrs. Martha Smith, Gina Moore, Dr. Nuria Rojas, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 87.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings.

On April 30, 2024, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Defendants' motion for summary judgment be granted as to Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of contract, wrongful termination, and defamation. [Doc. 116.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.* at 15.] Plaintiff filed objections to the Report along with additional exhibits, Defendants filed a response, and Plaintiff subsequently filed a letter with additional supporting documents. [Docs. 119; 120; 121; 122.]

**BACKGROUND**

The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information recounted by the Magistrate Judge that is necessary to address Plaintiff's objections.

This dispute arises out of Plaintiff's termination from the faculty at Benedict College ("Benedict"), a Historically Black College in Columbia, South Carolina. [Doc. 116 at 2.] Plaintiff, who is African-American, contends that he was terminated because he complained about the manner in which his Caucasian supervisor, Gina Moore, treated him and the choir program that he led. [*Id.*] However, an investigation by Benedict into Plaintiff's complaints about Moore did not result in any evidence that Moore treated faculty differently on the basis of race. [*Id.* at 3.] Martha Smith, Benedict's Human Resources Director, attempted to host an interactive reconciliation meeting between Plaintiff and Moore, but Plaintiff refused to participate, and Plaintiff continued to maintain that Moore was racially biased. [*Id.* at 3–4.]

In March 2022, Moore wrote to Dr. Janeen Witty, Vice President for Academic Affairs, and shared complaints about Plaintiff's teaching methodology from some of his students. [*Id.* at 4.] The primary complaints were that Plaintiff was teaching through group activities in which students learned from printed materials that they taught to each other and then were tested on shortly thereafter. [*Id.*] Other complaints included that Plaintiff did not adhere to the schedules in course outlines or syllabi, nor did he properly use Benedict's electronic teaching system, "Canvas." [*Id.*]

On April 1, 2022, Dr. Witty created a performance improvement plan ("PIP") for Plaintiff and wrote Plaintiff a letter providing him notice of the PIP. [*Id.*] In the letter, Dr.

Witty stated that Plaintiff had not been fulfilling his duties in accordance with the school's expectations, and she noted that Plaintiff had been counseled about his performance in a March 18, 2022, meeting in the Office of Human Resources, and on several prior dates by his supervisors.  [*Id.*]  The PIP identified four areas where Plaintiff would need to demonstrate immediate improvement:  (1) proper, effective, and timely use of Canvas; (2) proper, effective, and timely use of email; (3) utilization of appropriate learning materials for his classes; and (4) demonstration of teaching approaches that were not student led.  [*Id.* at 4–5.]  The PIP specifically listed four corrective actions that Plaintiff was required to complete in one week:  (1) post his students' grades and attendance on Canvas; (2) post corrected syllabi for his courses on Canvas; (3) remove copyrighted material from Canvas; and (4) stop scheduling classes, applied lessons, and other meetings during restricted hours on Tuesdays and Thursdays.  [*Id.* at 5.]  The letter warned that Plaintiff's failure to meet the PIP's objectives would result in disciplinary action, including termination.  [*Id.*]  Plaintiff refused to sign the PIP, however.  [*Id.*]

On June 17, 2022, Dr. Witty and Smith met with Plaintiff to review his performance for the prior semester.  [*Id.*]  Plaintiff had not completed the objectives set out in the PIP, nor had he submitted his end-of-semester clearance or closeout, which is required of all Benedict faculty.  [*Id.*]  Plaintiff refused to explain those failures and instead maintained that his attorney had instructed him not to discuss those issues.  [*Id.*]

On July 27, 2022, Dr. Witty sent a letter to Benedict's CEO and President, Dr. Roslyn Clark-Artis, recommending that Plaintiff be terminated due to his refusal to comply with the school's policies.  [*Id.*]  Dr. Clark-Artis subsequently terminated Plaintiff for cause, alleging that the termination was due to Plaintiff's lack of performance, insubordination,

and failure to complete his PIP. [*Id.*]  Plaintiff then appealed his termination to the Faculty and Staff Grievance and Appeals Committee, which held a hearing on September 22, 2022, and upheld the termination. [*Id.*]

Plaintiff filed a charge with the South Carolina Human Affairs Commission and received a right-to-sue letter. [*Id.*]  He subsequently filed this case. [*Id.*]  His Amended Complaint alleges federal claims of race discrimination and retaliation pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), and state law claims of breach of contract, wrongful termination, and defamation. [Doc. 116 at 5–6.]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

Although "objections need not be novel to be sufficiently specific," *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023), "a party must object to the finding or recommendation

4

on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (internal quotation marks omitted); *see Regassa v. Warden of FCI Williamsburg*, No. 8:22-cv-466-SAL, 2023 WL 2386515, at *2 (D.S.C. Mar. 7, 2023) (concluding objection was non-specific because the petitioner "ignore[d] the magistrate judge's analysis and repeat[ed] the arguments he made in his opposition brief"); *Velez v. Williams*, No. 9:19-cv-03022-JMC, 2021 WL 837481, at *5 (D.S.C. Mar. 5, 2021) (reviewing for clear error only when the petitioner's objections were "rehashed, general, and non-specific"), *appeal dismissed*, 2021 WL 5879177 (4th Cir. Dec. 13, 2021); *Hart v. Warden of Broad River Corr. Inst.*, No. CA009-997-HMH-PJG, 2010 WL 2232213, at *2 (D.S.C. June 3, 2010) (declining to individually analyze objections that were "non-specific," "unrelated to the dispositive portions" of the Report, or "merely restat[ed]" the petitioner's claims), *appeal dismissed*, 397 F. App'x 879 (4th Cir. Oct. 14, 2010). "Even so, when confronted with the objection of a pro se litigant, [courts] must also be mindful of [their] responsibility to construe pro se filings liberally." *Martin*, 858 F.3d at 245.

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff is proceeding pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a

5

valid claim on which the party proceeding pro se could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the pro se party's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)

**Title VII and § 1981**

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Additionally, Title VII's retaliation provision forbids an employer from taking action that discriminates against an individual because that individual has either "opposed any practice made an unlawful employment practice by this subchapter" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). And 42 U.S.C. § 1981 outlaws race discrimination in the making and enforcement of private contracts. 42 U.S.C. § 1981(a). Like Title VII, § 1981 encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). The elements to establish race discrimination and retaliation are the same under Title VII and § 1981. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (explaining that "the elements required to establish [race discrimination] are the same under [Title VII and § 1981]"); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (explaining that the "elements of [Title VII and § 1981] retaliation claims are identical").

Absent direct or indirect evidence of discrimination or retaliation in violation of Title VII or § 1981, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework

6

to establish claims of discrimination and retaliation. *Dickerson v. NHC Healthcare-Charleston, LLC*, No. 2:21-cv-2170-DCN-MGB, 2023 WL 6057394, at *5 (D.S.C. Sept. 18, 2023). Under this framework, an employee must first prove a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to produce evidence of some legitimate, nondiscriminatory and nonretaliatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). By providing such an explanation, the employer rebuts the presumption of discrimination or retaliation created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *Id.* at 510–11. If the employer produces evidence of a legitimate, nondiscriminatory and nonretaliatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 804.

## DISCUSSION

**The Report**

Concluding that Plaintiff has not forecasted direct evidence to support his Title VII and § 1981 claims, the Report analyzes them under the *McDonnell Douglas* burden-shifting framework. [Doc. 116 at 11–13.] The Report concludes that to succeed on either his Title VII or his § 1981 claims, Plaintiff must "show that Benedict's asserted reason for terminating him—his purported poor job performance—was a pretext to terminate him based on his race or in retaliation for his allegations of discrimination against Moore." [*Id.* at 11.] Accordingly, the Report concludes that the relevant inquiry is whether the people

7

who decided to terminate Plaintiff—Dr. Witty and Dr. Clark-Artis—"had a legitimate, honestly held belief that [Plaintiff] was not meeting the employer's expectations." [*Id.*]

The Report notes that although Plaintiff asserts "that the student complaints, [PIP], and performance assessments were 'contrived and manufactured,'" he "fails to point to any evidence in the record to support that assertion" and he "forecasts no evidence showing that Dr. Witty or Dr. Clark-Artis did not honestly believe that [Plaintiff's] poor job performance justified his termination."  [*Id.* at 12–13.]  Additionally, to the extent that Moore bore purportedly racial animus toward Plaintiff, Plaintiff failed to point to evidence that would sustain liability under a cat's paw theory, which would require "sufficient evidence that [Moore] possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." [*Id.* at 13 n.6 (internal quotation marks omitted).]  The Report also notes that when substantial issues regarding Plaintiff's performance were raised to Plaintiff, "Dr. Witty placed him on a [PIP], but [Plaintiff] failed to complete it." [*Id.* at 12.]  Accordingly, the Magistrate Judge recommends that summary judgment be granted to Defendants on both Plaintiff's Title VII and his § 1981 claims.[*] [*Id.* at 13.]

As for Plaintiff's state law claims, the Report recommends that the Court decline to exercise supplemental jurisdiction because, in the interest of comity, those claims are more appropriately resolved in South Carolina's courts because they involve complex issues of state law.  [*Id.* at 14.]

---

[*] The Magistrate Judge also concluded that "to the extent Plaintiff seeks damages against the individual defendants pursuant to Title VII, the claims fail as a matter of law" because "there is no individual liability under Title VII." [Doc. 116 at 9 n.4.]

**Objections**

In his 36 pages of objections to the Magistrate Judge's 14-page Report, Plaintiff takes a shotgun approach in which he largely reiterates the factual allegations in his Complaint. Some of the pro se Plaintiff's arguments are difficult to discern, but the Court has considered them all and overrules them with one exception identified in this Order.

Plaintiff first argues that several of the exhibits referenced in Defendants' summary judgment motion cannot be considered because they do not satisfy the authenticity rules of the Federal Rules of Evidence and, in any event, they were fabricated by Moore or otherwise based on her lies. [Doc. 119 at 10–16.] On that basis, Plaintiff maintains that the Magistrate Judge erred in concluding that Defendants "gave legitimate, non-discriminatory reasons for [Plaintiff's] termination." [*Id.* at 19–21 (internal quotation marks omitted).] The Court overrules this objection. Importantly, Defendants' burden under the *McDonnell Douglas* burden-shifting framework to articulate a legitimate, nondiscriminatory and nonretaliatory reason for the challenged adverse action "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted). The ultimate burden of persuasion remains at all times with Plaintiff to show that Defendants intentionally discriminated against him. *See id.* at 143.

Plaintiff's filings, by themselves, were sufficient to satisfy Defendants' burden, regardless of whether any of the documents attached to Defendants' summary judgment motion are considered. Plaintiff attached to his Complaint his PIP, the response he sent to Dr. Witty, and his termination letter, which outlined Benedict's claimed grounds for his termination. [Doc. 30-2 at 31–35, 58–59; *see* Doc. 30-1 at 9–10.] Plaintiff's Complaint

confirms that some of his students complained about him and that Moore, his supervisor, also reported shortcomings in his performance. [Doc. 30-1 at 1–2, 7–9.] In his response to Dr. Witty regarding the PIP, Plaintiff also acknowledges some of the problems that the PIP sought to address, and Plaintiff seeks only to offer excuses for those deficiencies. [*E.g.*, Doc. 30-2 at 33 (acknowledging his inability to learn how to effectively use the school's learning management system but blaming the confusing nature of the system and the poor quality of the instruction he had received); *id.* at 33–34 (blaming his alleged failure to respond promptly to emails on a problem with his computer or with the school's computer system).] In his response to the PIP, Plaintiff also confirms that some students complained that he was "conducting only peer teaching in [his] classes." [*Id.* at 34.] Plaintiff's tone in his response was defiant and disrespectful, and he accused Dr. Witty of disingenuousness and dishonesty. [*E.g.*, *id.* at 35 ("[Y]our standard of review for my progress appears to be no more than a veiled attempt at creating a no-win situation for me and a means for you to create a plausible reason not to offer me a contract for the coming year.").] Accordingly, even Plaintiff's allegations and the documents that Plaintiff himself presented were sufficient, on their own, to satisfy Defendants' burden of production regarding its legitimate, nondiscriminatory and nonretaliatory basis for his termination. The Magistrate Judge therefore correctly concluded that the burden shifted to Plaintiff to create a genuine dispute as to a material fact regarding whether the asserted reasons were a pretext for discrimination or retaliation.

Plaintiff also objects to the Magistrate Judge's statement in a footnote that Dr. Witty and Dr. Clark-Artis "are the same race as [Plaintiff,] which generally negates any inference of discrimination." [Doc. 116 at 12 n.5; *see* Doc. 119 at 27–28.] The Court

overrules this objection. Although it was in an unpublished opinion, the Fourth Circuit has held that the fact that the ultimate decision-makers and the plaintiff were the same race made it "unlikely" that racial animus motivated the decision. *Coggins v. Gov't of D.C.*, No. 97-2263, 1999 WL 94655, at *4 (4th Cir. 1999). There is no indication in the Report that the Magistrate Judge placed undue weight on this factor, and, in any event, this factor plays no part in this Court's decision that Defendants are entitled to summary judgment regarding Plaintiff's federal claims challenging his termination.

Plaintiff next objects that the Magistrate Judge refused to consider evidence that clearly proves Moore's "racial-bias tendencies and actions." [Doc. 119 at 28–31.] However, the Magistrate Judge explained that even assuming that Moore was biased against Plaintiff because of his race, it would not affect Defendants' entitlement to summary judgment on his federal claims. Specifically, the Magistrate Judge stated:

> Nor has [Plaintiff] pointed to any evidence suggesting that Dr. Witty's or Dr. Clark-Artis's actions [in terminating Plaintiff] were influenced by Moore's purported racial animus. *See generally Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290 (4th Cir. 2004) ("When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer."), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 169 (2009); *id.* at 291 (providing that to succeed on a cat's paw theory of liability, the plaintiff cannot merely show the subordinate had a substantial influence on the challenged decision[;] rather, the plaintiff must show "sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer").

[Doc. 116 at 13 n.6.] Plaintiff does not acknowledge the Magistrate Judge's analysis on this point, let alone offer any argument that it is erroneous, and, in any event, the Court discerns no error. As such, to the extent Plaintiff's federal claims are based on his termination, his objection is overruled.

Plaintiff next argues that the Magistrate Judge erred in recommending dismissal of the individual Defendants as to his § 1981 claim on the basis that only employers can be liable under § 1981. [Doc. 119 at 34–35.] This objection is overruled because the Report does not contain such a recommendation. Rather, the Report notes that "§ 1981 *permits* a cause of action against individuals for damages." [Doc. 116 at 9 n.4 (emphasis added).] It is only Title VII that the Magistrate Judge concludes does not allow damages against individual defendants. [*Id.*]

Plaintiff also objects to the Magistrate Judge's recommendation that summary judgment be granted to Defendants on his § 1981 retaliation claim. [Doc. 119 at 22–26.] Defendants, in arguing for summary judgment on that claim, appear to acknowledge only his claims of retaliatory *termination*, and do not present arguments against Plaintiff's § 1981 retaliation claim based on other actions. [Doc. 87-1 at 13.] The Court has already addressed Plaintiff's other objections regarding his claims that his termination violated Title VII and § 1981. However, the Court understands Plaintiff's argument here to encompass the contention that his § 1981 retaliation claim was not based only on his termination, but on many other acts as well, including: "Moore's libelous and defamatory public email," "Moore's verbal accusation against Plaintiff to his student on May 6, 2022," Moore's and administrators' changing the final grade of one of Plaintiff's choral students, Moore's making a change in Benedict's vendor payroll system to change an approved

request for leave of absence to a denied request, and Dr. Witty's placing Plaintiff on a PIP.  [Doc. 119 at 25–26.]

The Court concludes that, construed liberally, the Amended Complaint bases Plaintiff's § 1981 retaliation claim on acts in addition to his termination that were perpetrated by Moore alone or in conjunction with others.  Those include "[h]arassing, disrespectful, and demanding emails daily"; "[r]efus[al] to fund any activity or efforts associated with [Plaintiff]," including teaching materials, choir needs, and attendance at choral conferences; baiting his students to make false accusations against him to the Vice President of Academic Affairs; trying to make it appear that Plaintiff was responsible for his students' actions and lack of responsibility; creating a bogus reason to monitor his class; denying him approval for a requested leave of absence; and undertaking a "campaign of defamation, harassment, and the manufacture of bogus documents that damaged [his] character and reputation."  [Doc. 30-1 at 7–9, 13.]  Because Defendants did not address these aspects of the claim in their summary judgment motion, the Court agrees that the Magistrate Judge erred in recommending that summary judgment be granted on Plaintiff's § 1981 retaliation claim to the extent it is not based on his termination.  *See Goodine v. Robert Bosch, LLC*, No. 8:19-cv-1701-DCC-KFM, 2021 WL 4691736, at *10 n.9 (D.S.C. Jan. 19, 2021) (denying summary judgment on a claim that the defendant failed to address in its summary judgment motion), *Report and Recommendation adopted* by 2021 WL 4316971 (D.S.C. Sept. 23, 2021); *Hepstall v. United States*, No. 8:20-cv-00877-DCC-JDA, 2020 WL 13787522, at *5 (D.S.C. Dec. 9, 2020) (denying a motion to dismiss to the extent that the plaintiff's claims were based on conduct not addressed in the motion), *Report and Recommendation adopted by* 2021 WL

5578093 (D.S.C. Nov. 29, 2021), *appeal dismissed*, 2022 WL 2383872 (4th Cir. July 1, 2022). Although the Court denies Defendants' summary judgment motion as to the § 1981 retaliation claim to the extent it is not based on Plaintiff's termination, given the lack of clarity in the Amended Complaint, the Court will allow Defendants another opportunity to file a dispositive motion as to this claim.

Plaintiff finally objects to the Magistrate Judge's recommendation that the Court decline supplemental jurisdiction as to Plaintiff's claims of breach of contract and defamation. [Doc. 119 at 31–32.] Plaintiff's contention is that the Magistrate Judge erred by not addressing the supplemental jurisdictional issue earlier in the litigation at a time when the statute of limitations would not have barred him from filing the claims in state court. [*Id.*] Initially, the Court notes that because Defendants' summary judgment motion is denied as to Plaintiff's § 1981 retaliation claim based on conduct other than his termination, that extinguishes—at least for the time being—the basis on which the Magistrate Judge recommends declining to exercise supplemental jurisdiction. In any event, the Court overrules this objection because the supplemental jurisdiction statute, 28 U.S.C. § 1367(d), provides that any potentially applicable statute of limitations is tolled for 30 days after the dismissal without prejudice of the supplemental state law claim. *See Artis v. Dist. of Columbia*, 583 U.S. 71, 74 (2018). Accordingly, even if the Court eventually declines to exercise supplemental jurisdiction over these state-law claims, Plaintiff will have an opportunity to re-file them in state court.

## CONCLUSION

For the reasons discussed, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge and incorporates it by reference to the

extent consistent with this Order. For the reasons discussed, Defendants' motion for summary judgment [Doc. 87] is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to Plaintiff's § 1981 retaliation claim to the extent that the claim is based on conduct other than his termination and as to Plaintiff's state-law claims, and the denial is without prejudice to Defendants' right to file a second summary judgment motion. Defendants' summary judgment motion is otherwise GRANTED. The Court RECOMMITS this matter to the Magistrate Judge for consideration of Plaintiff's § 1981 claim and his state-law claims, including establishing a briefing schedule for a second summary judgment motion if necessary.

      IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

September 24, 2024
Columbia, South Carolina

## NOTICE OF RIGHT TO APPEAL

      The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.